Case No. 20-35739

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**INDEX NEWSPAPERS LLC**, et al.,
*Plaintiffs-Appellees*,

v.

**UNITED STATES MARSHALS SERVICE**, et al.,
*Defendants-Appellants*.

---

On Appeal from the United States District Court for the District of Oregon,
Case No. 3:20-cv-1035-SI, Honorable Michael H. Simon

---

## APPELLEES' PRELIMINARY OPPOSITION TO MOTION FOR STAY

---

**BRAUNHAGEY & BORDEN LLP**
Matthew Borden, Esq. (CA SBN: 214323)
borden@braunhagey.com
J. Noah Hagey, Esq. (CA SBN: 262331)
hagey@braunhagey.com
Athul K. Acharya, Esq. (CA SBN: 315923)
acharya@braunhagey.com
Gunnar K. Martz, Esq. (CA SBN: 300852)
martz@braunhagey.com
Ronald J. Fisher, Esq. (CA SBN: 298660)
fisher@braunhagey.com

351 California Street, 10th Floor
San Francisco, California 94104
Tel./Fax: (415) 599-0210

*Attorneys for Plaintiffs-Appellees*

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

STATEMENT OF FACTS ..................................................................................... 4

ARGUMENT ........................................................................................................ 7

I.     THE FEDERAL AGENTS HAVE NOT PROVEN
IRREPARABLE INJURY ............................................................................ 8

        A.     The District Court Found that the Injunction Would Not
Hinder Well-Trained Agents from Protecting Federal
Property and Personnel ........................................................................ 9

        B.     The Federal Agents' Claimed Inability to Follow the
District Court's Order Is Not Irreparable Injury ............................... 10

        C.     The Material Terms of the Injunction Have Been in Place
for Over a Month ................................................................................ 11

II.    THE FEDERAL AGENTS HAVE NOT PROVEN THAT AN
EXTRAORDINARY EMERGENCY EXISTS .......................................... 12

III.   THE FEDERAL AGENTS HAVE NOT PROVEN ANY OF
THE OTHER REQUIREMENTS FOR A STAY ...................................... 13

CONCLUSION ................................................................................................... 13

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Plaintiff-Appellee Index Newspapers LLC is a Washington limited liability company with two members: Quarterfold, Inc., an Illinois corporation, and Loaded-For-Bear Publishing Co., a Washington corporation. Neither Quarterfold nor LFB is a public company, and the shareholders of Quarterfold and LFB are all natural persons. The remainder of Plaintiffs are individuals.

Plaintiffs-Appellees Index Newspapers LLC, Doug Brown, Brian Conley, Sam Gehrke, Mathieu Lewis-Rolland, Kat Mahoney, Sergio Olmos, John Rudoff, Alex Milan Tracy, Tuck Woodstock, and Justin Yau respectfully submit this preliminary opposition to Defendants-Appellants' emergency motion for stay.

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

The Court should deny Appellants' "emergency" stay motion and order briefing on the normal 21-day track.[1] Appellants have not shown that they are entitled to a stay, and there is no emergency.

The District Court issued a 61-page decision enjoining Appellants U.S. Department of Homeland Security and U.S. Marshals Service (collectively, the "federal agents") from shooting, assaulting, and threatening journalists and legal observers covering Portland's Black Lives Matter protests. Appellants will suffer no irreparable injury from refraining from this violent and unlawful conduct, whereas Plaintiffs, who are journalists and legal observers covering the protests, face imminent harm if the decision is stayed.

The extensive factual findings made by the District Court, which the federal agents neglect (along with the standard of review for such findings), foreclose the federal agents' claim that they cannot adhere to the injunction. Based on 34

---

[1] Plaintiffs intend to submit a complete response to the federal agents' motion in accordance with the timeline set by Federal Rule of Appellate Procedure 27 or as ordered by the Court.

1

unrefuted declarations by journalists and legal observers, expert testimony from

Gil Kerlikowske, the former Senate-confirmed Commissioner of Customs and

Border Protection and former Police Chief of Seattle, and the fact that the Portland

Police have operated under an identical injunction for weeks, the District Court

found, *inter alia*, that:

- "[T]rained and experienced law enforcement personnel are able to protect public safety without dispersing journalists and legal observers and can differentiate press from protesters, even in the heat of crowd control." (Dkt. 157 at 24.)

- The federal agents failed to show "that any journalist or legal observer has harmed any federal officer or damaged any federal property." (*Id.* at 26-27, 42.)

- "[I]t is workable and feasible to disperse protesters generally but not require the dispersal of journalists and authorized legal observers." (*Id.* at 44-46.)

The District Court also made extensive findings that the federal agents were

retaliating against journalists and legal observers and violating their First

Amendment rights. For example:

- The federal agents repeatedly targeted journalists and legal observers when they "were identifiable as press, were not engaging in unlawful

activity or even protesting, [and] were not standing near protesters." (*Id*. at 35-39, 41.)

- "[T]he federal officers repeatedly have engaged in excessive force against journalists and legal observers, have not used appropriate crowd control tactics, and improperly have fired at the head, heart, and backs of journalists and legal observers when such conduct is generally not permitted." (*Id*. at 40.)

- Retaliating against journalists and legal observers is a matter of policy or a widespread practice in which DHS and USMS acquiesced. (*Id.* at 40.)

- "[I]t is likely that [Plaintiffs] and other journalists and legal observers will face such treatment again if they cover protests in Portland policed by [the federal] agents." (*Id.* at 36.)

- The federal agents' policy of dispersing journalists and legal observers is not narrowly tailored to their ostensible goal of protecting federal property. (*Id.* at 44-46.)

The federal agents cannot prove the District Court's findings were clearly erroneous. In fact, they do not even try. They therefore cannot prove the elements for a stay: irreparable injury, likelihood of success on the merits, that the balance of equities tilts sharply in their favor, and that the public interest favors them. To the contrary, the public interest militates in favor of preventing the federal agents

3

from using violence and intimidation to monopolize the narrative about the protests in Portland.

The federal agents' motion separately fails because there is no emergency here. In the District Court, the federal agents repeatedly represented that they were extremely unlikely to police protests in Portland in the foreseeable future. And the key restrictions at issue have been in place since the District Court issued a temporary restraining order on July 23, 2020, issued a preliminary injunction on August 20, and during the five days the federal agents waited to file this "emergency" motion. Thus, not only is there no emergency, but issuing an emergency stay would upset, rather than preserve, the status quo.

The federal agents have not come close to meeting their heavy burden to show that they need emergency relief. The Court should deny the federal agents' request for an emergency stay and their request for an expedited hearing on their motion for a stay pending appeal, and treat their motion as an ordinary motion under Federal Rule of Appellate Procedure 27.

## STATEMENT OF FACTS

The relevant facts are those found by the District Court. First, the Portland Police Bureau has not found terms materially identical to the injunction at issue unworkable:

> [A]n almost identical order has been in place in this case against Defendant City of Portland (and the Portland

4

> Police Bureau) since July 2, 2020, when the Court
> entered a temporary restraining order against the City.
> After Plaintiffs requested a preliminary injunction, the
> City, rather than oppose that motion, stipulated with
> Plaintiffs to the entry of a preliminary injunction, which
> the Court granted. The City did not contend that the
> terms of the stipulated preliminary injunction were
> intrusive, unworkable, or vague.

(Dkt. 160 at 4 (citing Dkts. 33, 48, 49).) [2] That is so even though they have policed

a far higher proportion of the recent protests.[3]

Second, the District Court adopted the opinion of Plaintiffs' expert, Mr.

Kerlikowske, that the prohibitions contained in the injunction are safe for law

enforcement personnel:

> Defending the federal courthouse in Portland mainly
> involves establishing a perimeter around the building,
> and there is no reason to target or disperse journalists
> from that position. Additionally, to the extent officers
> leave federal property, the TRO is also safe for federal
> law enforcement officers, according to Mr. Kerlikowske.

---

[2] The federal agents assert repeatedly that the preliminary injunction against them, unlike the one against the City, permits persons actively participating in protests to claim the protection of the injunction. (Mot. at 2, 8, 10-11, 13.) This appears to be based on an intentional misreading of the injunction, which protects only persons whom federal agents "know or reasonably should know is a Journalist or Legal Observer." (Dkt. 157 at 58.) The injunction further explains that "not engaging in protest activities" is one possible indicia of being a journalist or legal observer. The notion that in so doing it grants protection to violent protesters beggars belief. (*Id.* at 59-60.) Plaintiffs will more fully address this point in further briefing.

[3] The federal agents asserted to the district court that their policing was essentially limited to the period from July 3 to July 29. (Dkt. 101-5 ¶ 5; Dkt. 138-1 ¶¶ 9-13.)

(Dkt. 157 at 24.) The District Court also adopted Mr. Kerlikowske's opinion that

the injunction is workable:

> He states that trained and experienced law enforcement
> personnel are able to protect public safety without
> dispersing journalists and legal observers and can
> differentiate press from protesters, even in the heat of
> crowd control. He adds that any difficulties that may be
> faced by federal authorities arise from their lack of
> training, experience, and leadership with experience in
> civil disturbances and unrest.

(*Id.*) The District Court adopted these opinions even though the federal agents

submitted a rebuttal declaration, because it found Mr. Kerlikowske to be qualified,

credible, and persuasive. (Dkt. 160 at 5 (citing Dkt. 157 at 23).)

Finally, the District Court found that the federal agents had "not shown that

any journalist or legal observer has harmed any federal officer or damaged any

federal property." (Dkt. 157 at 26-27, 42.) At most, the court held,

> [t]he fact that a few people may have engaged in some
> unlawful conduct does not outweigh the important First
> Amendment rights of journalists and legal observers and
> the public for whom they act as surrogates. Further, there
> is no evidence that any of the named Plaintiffs engaged
> in any of the purported unlawful conduct described by
> the Federal Defendants.

(*Id.* at 57.) Thus, "the stated need to protect federal property and the safety of

federal officers is not directly affected by allowing journalists and legal observers

to stay, observe, and record events." (*Id.* at 42.)

6

The federal agents have not even attempted to show that these findings are clearly erroneous. The Court should therefore adopt them as established for purposes of this motion.

## **ARGUMENT**

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). It is instead "an exercise of judicial discretion," and a party requesting a stay pending appeal "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* Those factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id*. at 134 (quotation omitted).

In this Circuit, the moving party *must* show that it will suffer irreparable harm without a stay, or else the court will deny the request "regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam) (citing *Nken*, 556 U.S. at 433-34). A party seeking an administrative stay faces an even higher burden. It must also show that such a stay would "preserve the status quo until the substantive motion for a

stay pending appeal can be considered on the merits." *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019); *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019).

Here, the federal agents can make neither showing. They repeatedly told the District Court that they had essentially suspended protest-policing operations in Portland, and the District Court found that following the injunction would not impair such operations if they resumed. (Dkt. 157 at 43-46; Dkt. 160 at 6.) Further, the status quo is that federal agents have been bound by materially the same terms for more than a month. The Court should deny the federal agents' request for emergency relief.

## I.   THE FEDERAL AGENTS HAVE NOT PROVEN IRREPARABLE INJURY

The federal agents have failed to prove that they will suffer irreparable injury without a stay because they cannot refute the district court's factual findings that the injunction would not hinder well-trained agents from protected federal property and personnel; because their claimed inability to follow the injunction is at any rate a defense to contempt, not an irreparable injury; and because the material terms of the injunction have been in place for more than two months.

**A.    The District Court Found that the Injunction Would Not Hinder Well-Trained Agents from Protecting Federal Property and Personnel**

The District Court found that "it is workable and feasible to disperse protesters generally [without requiring] the dispersal of journalists and authorized legal observers." (Dkt. 157 at 45.) It found that "[t]he fact that the City [of Portland] did not ask for any modification [of a TRO containing materially identical terms] and then stipulated to a preliminary injunction is compelling evidence that exempting journalists and legal observers is workable." (*Id.* at 44.) It further found that

> Defending the federal courthouse in Portland mainly involves establishing a perimeter around the building, and there is no reason to target or disperse journalists from that position. Additionally, to the extent officers leave federal property, the TRO is also safe for federal law enforcement officers . . . .
>
> [T]rained and experienced law enforcement personnel are able to protect public safety without dispersing journalists and legal observers and can differentiate press from protesters, even in the heat of crowd control. . . . [A]ny difficulties that may be faced by federal authorities arise from their lack of training, experience, and leadership with experience in civil disturbances and unrest.

(*Id.* at 24-25 (describing the opinions of Mr. Kerlikowske and adopting them as "relevant, helpful, and persuasive"); *id.* at 44-45 ("Plaintiffs' expert witness Mr. Kerlikowske provides qualified, relevant, and persuasive testimony showing that the relief provided in the TRO against the Federal Defendants is workable.").)

9

Finally, it found that Mr. Kerlikowske's testimony was "persuasive in discounting [the] possibility that "persons may disguise themselves as press and commit violent or illegal acts." (*Id.* at 46.)

These findings of fact are entitled to substantial deference on appeal and are reviewed only for clear error. *Crittenden v. Chappell*, 804 F.3d 998, 1006 (9th Cir. 2015). This standard applies to findings based on documentary or oral evidence and "to both subsidiary and ultimate facts." *Saltarelli v. Bob Baker Group Med. Trust*, 35 F3d 382, 384 (9th Cir. 1994); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 837 (2015).

The federal agents do not even attempt to show that the District Court's factual findings are clearly erroneous. Their brief does not even contain the words "clear error" or "clearly erroneous." In the absence of such a showing, this Court should adopt the District Court's factual findings, under which the federal agents are in no danger of irreparable harm.

## B. The Federal Agents' Claimed Inability to Follow the District Court's Order Is Not Irreparable Injury

The entire basis for the federal agents' claim of irreparable harm is that they cannot follow the District Court's injunction. But that is not irreparable harm; it is

a defense to contempt that they could raise below—if it were true.[4] *Stone v. City &*
*Cty. of San Francisco*, 968 F.2d 850, 856 & n.9 (9th Cir. 1992), *as amended on*
*denial of reh'g* (Aug. 25, 1992) (explaining that contemnors can avoid sanctions by
showing that they took "all reasonable steps within their power to insure
compliance with the court's orders" (quotation marks omitted)). Nothing in the
record suggests that federal agents have been inhibited in their law enforcement
activities by the injunction, and they point to none in their brief.

### C. The Material Terms of the Injunction Have Been in Place for Over a Month

In addition to showing irreparable harm, a party seeking an emergency stay
must show that an administrative stay would preserve the status quo. But far from
preserving the status quo, an administrative stay here would destroy it. Materially
the same terms have bound the federal agents since July 23, and all of Portland law
enforcement since July 2. (Dkt. 84; Dkt. 33.) Staying the injunction would
therefore mean that for the first time in nearly two months, law-enforcement
officers in Portland would have the power to shoot, beat, and arrest journalists and
legal observers who do their job and report on protests and the law-enforcement
response to protests. This disruption to the status quo is a separate and independent

---

[4] It is not true. As Plaintiffs' expert explained, allowing press to remain, unharmed,
is something other police departments have safely done in hundreds of similarly
chaotic protests. (Dkt. 135 ¶¶ 3-4, 9, 15-19, 21, 28.)

reason to deny the federal agents' request for an administrative stay. *Doe #1*, 944 F.3d at 1223.

## II.   THE FEDERAL AGENTS HAVE NOT PROVEN THAT AN EXTRAORDINARY EMERGENCY EXISTS

In the federal agents' own words, "the resumption of ordinary policing by the state and local governments has *eliminated* federal law enforcement officers' need to interact with protesters outside of the courthouse." (Dkt. 122 at 4 (emphasis added); *see also* Dkt. 113 at 11; Dkt. 138 at 29.) That belies their assertion in this Court that the injunction will "immediately and irreparably injure federal law-enforcement personnel working to protect public safety." (Mot. at 4.)

Further, the federal agents waited five days to seek a stay. That is almost the same length of time by which they want Plaintiffs to file their Opposition to their stay motion. There is no reason for such a compressed time frame given the lack of exigency in Portland, the lack of any injury and the lack of any urgency by the federal agents. The federal agents' failure to show "a sufficient exigency to justify changing the status quo, particularly during the few weeks before . . . oral argument on the merits" is another reason to deny an emergency stay. *Doe #1*, 944 F.3d at 1223.

## III. THE FEDERAL AGENTS HAVE NOT PROVEN ANY OF THE OTHER REQUIREMENTS FOR A STAY

Plaintiffs incorporate their briefing on the preliminary injunction motion (Dkts. 134 and 142) and the accompanying evidence in the record (Dkts. 43-44, 55-64, 71-78, 80-82, 87-95, 115-119, 135-137, 145, 147) by reference.[5] As shown therein, the federal agents cannot prove a likelihood of success on the merits, that the balance of equities favors them, or that the public interest supports their repeated assaults on the media.

## <u>CONCLUSION</u>

For the reasons above, the federal agents' motion for emergency stay and expedited consideration of their motion for stay pending appeal should be denied.

Dated: August 26, 2020

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Matthew Borden*
      Matthew Borden
      Athul K. Acharya
      Gunnar K. Martz

Attorneys for Plaintiffs-Appellees Index Newspapers LLC, Doug Brown, Brian Conley, Sam Gehrke, Mathieu Lewis-Rolland, Kat Mahoney, Sergio Olmos,

---

[5] Plaintiffs have had only a few hours to prepare this brief opposing the federal agents' demand for an emergency stay.

13

John Rudoff, Alex Milan Tracy, Tuck
Woodstock, and Justin Yau

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached answering brief is proportionately spaced, has a typeface of 14 points or more, and contains 2828 words.

Dated: August 26, 2020 Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Matthew Borden*
       Matthew Borden

Attorneys for Defendant/Appellee Index Newspapers, LLC, Doug Brown, Brian Conley, Sam Gehrke, Mathieu Lewis-Rolland, Kat Mahoney, Sergio Olmos, John Rudoff, Alex Milan Tracy, Tuck Woodstock, and Justin Yau