No. 20-35739

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

INDEX NEWSPAPERS LLC, a Washington limited-liability company, dba
PORTLAND MERCURY; DOUG BROWN; BRIAN CONLEY; SAM GEHRKE;
MATHIEU LEWIS-ROLLAND; KAT MAHONEY; SERGIO OLMOS; JOHN
RUDOFF; ALEX MILAN TRACY; TUCK WOODSTOCK; JUSTIN YAU; and
those similarly situated;

*Plaintiffs-Appellees,*

v.

U.S. DEPARTMENT OF HOMELAND SECURITY and
U.S. MARSHALS SERVICE,

*Defendants-Appellants,*

and

CITY OF PORTLAND; JOHN DOES 1-60,

*Defendants.*

**REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT
RULE 27-3 FOR A STAY PENDING APPEAL AND FOR AN IMMEDIATE
ADMINISTRATIVE STAY PENDING DISPOSITION OF THE STAY
MOTION**

ETHAN P. DAVIS
 *Acting Assistant Attorney General*

SOPAN JOSHI
 *Senior Counsel to the Assistant Attorney
 General*

MARK R. FREEMAN
MARK B. STERN
MICHAEL SHIH
 *Attorneys, Appellate Staff
 Civil Division
 U.S. Department of Justice
 950 Pennsylvania Ave., NW
 Washington, DC 20530
 202-353-6880*

## INTRODUCTION AND SUMMARY

The district court's preliminary injunction is in every respect extraordinary, and plaintiffs cite no precedent for an order of this kind. Plaintiffs do not dispute that the legal premise of the injunction is that the First Amendment provides journalists and legal observers with a general right to defy lawful dispersal orders issued by officers combating rioters. The government explained that no such right exists. Plaintiffs provide no contrary authority, and instead direct the Court to their district court filings—which also supply no contrary authority. That alone should counsel in favor of a stay.

Eliding the merits, plaintiffs instead claim that a stay is unwarranted because the injunction will not impair federal law-enforcement operations. This argument ignores both the specific terms of the injunction and the declarations in the record describing the impact of those terms on federal officers' safety and effectiveness. The Court should reject plaintiffs' invitation to second-guess the federal government's judgment on this issue.

Plaintiffs also contend that a stay is unnecessary because federal officers will not imminently engage with protesters. But plaintiffs cannot have it both ways. Plaintiffs convinced the district court to grant prospective injunctive relief by arguing that such future engagement was likely and imminent. *See* Doc.157, at 47 (stating that the likelihood of engagement was sufficient to support plaintiffs' allegations of "immediate threatened injury"). If federal officers are unlikely to confront protesters,

then the preliminary injunction is improper. But if such engagement is imminent, as the district court in fact concluded, the irreparable harms to the government will be imminently felt as well.

Finally, plaintiffs contend that, if a stay is entered, federal officers will have *carte blanche* to "shoot, beat, and arrest journalists and legal observers who do their job and report on protests and the law-enforcement response to protests." Opp. 11. This suggestion is baseless and offensive. As the government has explained, federal policy expressly prohibits retaliation against anyone—protesters, journalists, and legal observers alike—for exercising First Amendment rights. Officers who violate those policies will be investigated and appropriately disciplined.

For these reasons, this Court should reject plaintiffs' inflammatory rhetoric and stay the injunction pending appeal, as well as enter an immediate administrative stay.

## ARGUMENT

## I. Plaintiffs Offer No Basis On Which A Stay Would Properly Be Denied

### A. A Stay Is Required To Halt the Impact of an Injunction That Rests on Serious Legal Error.

As the government explained, the preliminary injunction rests on the mistaken premise that the First Amendment grants journalists and legal observers a general exemption from dispersal orders by law-enforcement officers confronting a riot. Mot. 16-18. Plaintiffs do not defend the district court's mistaken constitutional analysis. They instead rely on their district court filings. Opp. 13. But neither plaintiffs nor the

district court have at any point cited any authority for their view of the First Amendment, or reconciled their position with governing precedents. Because the injunction rests on serious legal error, the government is likely to prevail on the merits, and a stay of the injunction should issue. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits."); *California ex rel. Becerra v. Azar*, 950 F.3d 1067, 1082 (9th Cir. 2020) ("[A] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of law.").

**B.    The Balance of Harms and the Public Interest Require Issuance of a Stay**

**1.**    Plaintiffs contend (Opp. 9-10) that the injunction does not impair law enforcement. This Court should reject that invitation to second-guess the government's judgment. In any event, plaintiffs' argument cannot be squared with the injunction's actual terms. The injunction requires that, regardless of circumstances, officers must adapt crowd-control measures to exempt self-identified "journalists" and "legal observers." Doc.157, at 59. Imposing such constraints on officers attempting to control a dangerous and destructive situation is extraordinary enough. But the order additionally imposes a catalogue of instructions mandating— among other things—that officers identify members of a crowd as journalists or legal observers if they are wearing sufficiently "distinctive clothing" or are carrying unidentified types of "gear." *Id.* at 59-60. Tellingly, plaintiffs do not attempt to

defend any of these instructions. Plaintiffs also do not attempt to justify the injunction's separate requirement that the government and plaintiffs devise new uniform markings—notwithstanding the government's operational and safety concerns—for the express purpose of enabling punitive contempt proceedings against individual officers who are not party to the proceedings and who have not done anything wrong. Mot. 15-16.

Plaintiffs' only argument is that, to the extent the injunction applies even to journalists and legal observers who are intermingling with rioters or actively participating in protests that have turned violent, the injunction must not be construed so broadly. Opp. 5 n.2. But the injunction is not limited to journalists and legal observers who are "standing off to the side of a protest, not engaging in protest activities, and not intermixed with persons engaged in protest activities." Doc.157, at 59-60. To the contrary, the court expressly specified that these terms are *not* "requirements" of being a journalist or legal observer. *Id.* By so declaring, the court clarified that members of a crowd who would otherwise qualify as journalists or legal observers will remain covered by the injunction even if they actively engage in protest activities that have turned violent or intermingle with people who are.

**2.** Plaintiffs likewise make no reference to the declarations of several federal officers who responded to riots in Portland while the district court's temporary restraining order was in effect. These declarations leave no doubt of the difficulties and dangers of attempting to distinguish journalists from other protesters

in the midst of a violent protest.  *E.g.*, Doc.101-6, ¶ 12 ("Many journalists are standing in the middle of individuals attempting to assault agents, not off to the side, making it difficult to lawfully disperse violent crowds").

The declarations also confirm that protesters have taken advantage of the court's orders in an effort to avoid complying with lawful directives from federal officers.  For example, the declarations describe:

- assaults on officers while attempting to ascertain whether a protester was a journalist, Doc.101-6, ¶ 13;

- "individuals wearing press markings who were shielding or obscuring other individuals who were throwing heavy projectiles toward federal officers," Doc.101-4, ¶ 5;

- a self-identified journalist encouraging protesters to tamper with government barricade, and stating that she has "a bunch more press passes to give out to people," Doc.101-5, ¶ 8(c); and

- a protester who was arrested while wearing "insignia indicating he was a journalist" and carrying commercial-grade fireworks, Doc.101-6, ¶ 10.

Disregarding this evidence and the actual terms of the injunction, plaintiffs believe it sufficient that "the District Court adopted the opinion of Plaintiffs' expert, Mr. Kerlikowske, that the prohibitions contained in the injunction are safe for law enforcement."  Opp. 8 (citing Doc.157, at 24).  But the court clearly erred by relying

5

on the *opinion* of a retired law-enforcement officer to discredit *undisputed facts* recounted by the active federal officers who are *actually present* in Portland. The court compounded this error by uncritically accepting the declaration's opinions in the absence of adversarial testing.

Even on its own terms, the declaration does not support plaintiffs' argument. The declaration merely describes Mr. Kerlikowske's personal experience with protests that occurred a decade ago or earlier. Doc.135, at 2. The declaration does not state that officers confronting those prior protests were required to deal with the novel tactics adopted by certain Portland protesters in the wake of the district court's temporary restraining order. Nor does the declaration address any of the specific practical concerns that current law-enforcement officers have identified. The declaration merely asserts that any difficulties officers have encountered must be attributable to a lack of training. *Id.* at 4. Mr. Kerlikowske had no factual basis for this assessment, which is contradicted by evidence of the extensive training in crowd-control techniques that federal officers receive. Doc.138-2, at 152-61. And of course Mr. Kerlikowske did not consider the injunction's condition that self-identified journalists and legal observers would be exempt from lawful dispersal orders even if they actively mingle with and participate in protests that have turned violent.

**3.** Plaintiffs contend (Opp. 9) that the federal government's injuries are nonexistent because the City of Portland consented to a similar injunction. But as we have explained, the City's willingness—based on its own litigation and policy

judgments—to embrace an injunction is not a basis for disregarding the past and present impact of the court's orders on federal crowd-control operations, even apart from the fact that the Portland injunction is less onerous in material respects. Mot. 13-14. Moreover, plaintiffs' protestations (Opp. 4) that the City's injunction is not "unworkable" are implausible given that multiple named plaintiffs have publicly accused the City of violating it. *See* Doc.138, at 35 (listing sources). The City has itself represented to the district court that its officers—like federal officers—have encountered "issues with persons with 'press' markings intermingling with protesters and interfering with law enforcement." Doc.157, at 44 n.11.

**4.** Plaintiffs additionally argue (Opp. 8, 12) that, even if the government will be irreparably injured by the injunction, such injuries are not imminent because federal officers are unlikely to engage with protesters in the future, noting the July 29 agreement between DHS and the State of Oregon. Plaintiffs, however, cannot have it both ways. Plaintiffs convinced the district court that a preliminary injunction was necessary by arguing that that they faced a threat of imminent injury notwithstanding the agreement. *See* Doc.157, at 47 (finding that the likelihood of engagement was sufficient to support plaintiffs' allegations of "immediate threatened injury"). If federal officers are unlikely to confront protesters, then the preliminary injunction is improper. But if such engagement is imminent, as the district court in fact concluded, the irreparable harms to the government will be imminently felt as well.

**5.**     Finally, plaintiffs make the inflammatory assertion that that "[s]taying the injunction would" give "law-enforcement officers in Portland . . . the power to shoot, beat, and arrest journalists and legal observers who do their job and report on protests and the law-enforcement response to protests." Opp. 11. The suggestion that federal officers would conduct a lawless rampage against journalists in the absence of an injunction is baseless and offensive. As plaintiffs do not dispute, federal policy explicitly prohibits law-enforcement officers from retaliating against any member of the public—including journalists and legal observers—for exercising their First Amendment rights. *E.g.*, Doc.67-6, at 1; Doc.67-7, at 2. The government also requires officers to undergo extensive training in permissible uses of force, Doc.138-2, at 152-61, and investigates and appropriately disciplines officers who deploy force impermissibly. This Court should reject plaintiffs' unsubstantiated insinuations to the contrary. *Cf. United States v. Armstrong*, 517 U.S. 456, 464 (1996) (holding that Executive Branch actions are entitled to a presumption of regularity). In any event, this argument inherently depends on a likelihood of future interaction between federal police and protesters—precisely the circumstances that plaintiffs simultaneously assert (Opp. 8, 12) are unlikely to arise.

## II.     Plaintiffs Offer No Basis For Denying An Administrative Stay

Plaintiffs have not offered any legitimate basis for denying the government's request for an immediate administrative stay. They contend (Opp. 11) only that a stay would disrupt the status quo. This argument misconceives the applicable legal

principles.  That a district court issues a temporary restraining order prior to issuing a preliminary injunction does not justify the injunction on the ground that it is preserving a "status quo" that exists only because of the initial, and non-appealable, temporary order.  Rather, the relevant status quo for these purposes is *before* the temporary order was entered.

## CONCLUSION

The Court should (1) stay the preliminary injunction pending appeal, and (2) enter an immediate administrative stay while it considers this motion.

Respectfully submitted,

ETHAN P. DAVIS
  *Acting Assistant Attorney General*

SOPAN JOSHI
  *Senior Counsel to the Assistant Attorney General*

MARK R. FREEMAN
MARK B. STERN

   */s/  Michael Shih*
MICHAEL SHIH
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  *202-353-6880*

AUGUST 2020

9

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this reply complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Garamond, a proportionally spaced font. I further certify that this reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d) because it contains 1,983 words according to the count of Microsoft Word.

/s/ Michael Shih
MICHAEL SHIH
Counsel for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that, on August 26, 2020, I electronically filed the foregoing reply with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are CM/ECF users and that service will be accomplished by using the appellate CM/ECF system.

/s/ Michael Shih
MICHAEL SHIH
Counsel for Appellants